UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JUAN GOMEZ RIOS, ELIEZER FRANCIS,
GILDARDO OJEDA-JUAREZ, CARLOS              14-CV-06800 (GHW)
SUAREZ, PEDRO TLACOMULCO, and
RENE ALMAZO,

        Plaintiffs,

    -against-

LOUYA CORP. d/b/a JACQUES BRASSERIE,
SERVICE CORP. d/b/a JACQUES 1534, JBB
BAR AND GRILL, INC. d/b/a THE PITCH &
FORK, and HAMIMI "JACQUES" OUARI,

        Defendants.
-------------------------------------------------------------X

## DEFENDANTS' PRE-TRIAL MEMORANDUM OF LAW

Adam C. Weiss (AW-5752)
THE LAW FIRM OF ADAM C. WEISS, PLLC
3 School Street, Suite 303
Glen Cove, New York 11542
(646) 489-0059 (tel)
(516) 759-2556 (fax)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………....ii

PRELIMINARY STATEMENT…………………………………………………..1

FACTS……………………………………………………………………………2

ARGUMENT……………………………………………………....……………..3

**POINT I**

PLAINTIFFS CANNOT MEET THEIR BURDEN THAT THEY
PERFORMED WORK FOR WHICH THEY WERE NOT
PROPERLY COMPENSATED…………………………………………….....3

**POINT II**

DEFENDANTS PROPERLY TOOK A "TIP CREDIT" FOR
FRONT-OF-THE-HOUSE EMPLOYEES……………………………………9

**POINT III**

DEFENDANTS ARE NOT RESPONSIBLE FOR ANY SPREAD
OF HOURS PAY…………………………………………………………...14

**POINT IV**

THE THREE CORPORATE DEFENDANTS ARE NOT JOINT
EMPLOYERS FOR THE PURPOSES OF FEDERAL AND STATE LAWS…....…15

**POINT V**

TO THE EXTENT THAT DEFENDANTS ARE LIABLE TO PLAINTIFFS
FOR FEDERAL OR STATE WAGE VIOLATIONS, THEY DID NOT
ACT WILLFULLY……………………………..……………………….………..19

CONCLUSION…………………………………………………………………22

i

## TABLE OF AUTHORITIES

*Almeida v. Aguinaga*, 500 F.Supp. 2d 366 (S.D.N.Y. 2007)…………...……………….15

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)………..……………..3-4, 7

*Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460 (June 26, 2013)……………..……11-12

*Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008)……………..3, 21

*Daniels v. 1710 Realty LLC*, No. 11 Civ. 2674, 2012 WL 4354494
(2d Cir. Sept. 25, 2012)……………………………………………………………...4, 7

*Hart v. Crab Addison, Inc.*, 2014 WL 175231 (W.D.N.Y. June 24, 2014)……………...10

*Herman v. RSR Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999)………….…………….16-17, 20

*Jenkins v. Hanac, Inc.*, 493 F. Supp. 2d 556 (E.D.N.Y. 2007)…………………………..15

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011)…………………………4, 21

*Lauria v. Heffernan*, 607 F. Supp. 2d 403 (E.D.N.Y. 2009)……………………………16

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)………………………………..20

*O'Brien v. Ed Donnelly Enterprises,* 575 F.3d 567 (6th Cir. 2009)……………………4, 6

*Pethers v. Metro Lift Propane*, No. 09-CV-10516, 2010 WL 3023887
(E.D. Mich., July 29, 2010)……………………………………………………………….6

*Rutherford Food Corp v. McComb*, 331 U.S. 722 (1947)………………………………17

*Seenaraine v. Securitas Sec. Servs. USA, Inc.*, 830 N.Y.S.2d 728 (2d Dep't 2007)…….15

*Winans v. Starbucks Corp.*, 698 F.3d 104 (2d Cir. 2012)…………………………11-12

*Wong v. Hunda Glass Corp.*, No. 09 Civ. 4402, 2010 WL 2541698
(S.D.N.Y. June 23, 2010)…………………………………….………………...…3

*Yang v. ACBL Corp.*, 427 F.Supp. 2d 327 (S.D.N.Y. 2005)……………………………14

*Young v. Cooper Cameron Corp.*, 586 F.3d 201 (2d Cir. 2009)………………………...20

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003)……………………………3, 16

## PRELIMINARY STATEMENT

This Pre-Trial Memorandum of Law is submitted by Defendants, Louya Corp. d/b/a Jacques Brasserie, Service Corp. d/b/a Jacques 1534, JBB Bar and Grill, Inc. d/b/a The Pitch & Fork, and Hamimi "Jacques" Ouari, in accordance with the Court's Order, dated April 9, 2015, to provide the Court with the applicable legal analysis (and proposed conclusions of law) in advance of the bench trial to be commenced on June 15, 2015. This action concerns the claims of Plaintiffs, Juan Gomez Rios, Eliezer Francis, Gildardo Ojeda-Juarez, Carlos Suarez, Pedro Tlacomulco, Rene Alamazo, and Ramon Hernandez, that Defendants violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by allegedly failing to pay minimum wage, overtime, spread of hours pay and withholding tips as well as recordkeeping and wage statement violations.

As set forth herein, and will be further shown at trial, Defendants paid all Plaintiffs at or above the applicable minimum wage at all times throughout their respective employments.  Second, Defendants paid Plaintiffs at or above the applicable overtime wage rates.  Indeed, under the pay plans promulgated by Defendants, Plaintiffs were often and regularly paid for many more overtime hours than they actually worked resulting to a windfall to the Plaintiffs on a weekly basis over the course of many years. Third, Defendants strongly deny that they withheld any tips earned by Plaintiffs.  All tips earned by "front of the house" workers were combined in a tip pool arrangement that was (and is) compliant with federal and state laws and then distributed only to eligible employees who customarily and regularly provided service functions to customers. Fourth, although Defendants admittedly were unaware of the "spread of hours" requirements under New York Law, Plaintiffs rarely, if ever, worked a sufficient numbers

of hours on any given day for this requirement to be applicable.  In addition, an issue exists as to whether Plaintiffs who may have worked over 10 hours earned sufficient wages over and above the minimum wage whereby the spread of hours requirement was no longer applicable.  Therefore, at worst, a *de minimus* amount of spread of hours pay is due, if any.  Finally, Defendants deny that they engaged in any record violations as to the "front of the house" employees who received weekly wage statements listing the hours worked, the applicable hourly rates (including overtime, when worked), tips earned and legal deductions.  As to the "back of the house" employees, Defendants will stipulate that the records and wage statements provided to these employees were incomplete. Notwithstanding any of the above, to the extent that Defendants were negligent regarding any of their obligations under state or federal law (which Defendants disagree), then any purported violations were not willful or in bad faith.

In sum, the trial evidence will show that Plaintiffs were all long-term employees of Defendants who were paid in accordance with applicable laws and, accordingly, the claims must be dismissed.

## **FACTS**

For the sake of brevity and judicial economy, the Court is respectfully referred to Defendants' Proposed Findings of Fact, submitted concurrently, and the Declarations of Hamimi "Jacques" Ouari and Adriano Rodriguez, dated May 18, 2015, for a complete recitation of the facts highlighted herein.

## ARGUMENT

### POINT I

### PLAINTIFFS CANNOT MEET THEIR BURDEN THAT THEY PERFORMED WORK FOR WHICH THEY WERE NOT PROPERLY COMPENSATED

The overarching allegations in this case involve claims that Plaintiffs were not paid in accordance with the FLSA and NYLL.  Essentially, Plaintiffs claim that they worked hours for which they were not compensated at the proper wage rates and also claim that they were not paid for all hours worked.  Defendants steadfastly deny all of those allegations.

The applicable legal standard is that an employer is required under the FLSA and NYLL to pay an employee a legally mandated minimum wage.  *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 65 (2d Cir. 2003); see 29 U.S.C. Section 206(a)(1); NY Labor Law Section 652(1).  Both the FLSA and NYLL require "that employer compensate employees who work over forty hours per week with overtime pay at the rate of one and one-half times the regular rate."  *Wong v. Hunda Glass Corp.*, No. 09 Civ. 4402, 2010 WL 2541698, at *2 (S.D.N.Y. June 23, 2010); *see also Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008).

Under the FLSA and NYLL, an employee-plaintiff bears the burden that he/she performed work for which he/she was not properly compensated.  *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).  Where an employer has failed to keep accurate records, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable

3

inference." *Kuebel*, 643 F.3d at 362 (quoting *Anderson*, 328 U.S. at 687). Still, "the plaintiff must produce '*sufficient* evidence to show the amount and extent of that work as a matter of *just and reasonable inference*.'" *Daniels v. 1710 Realty LLC*, No. 10 Civ. 22, 2011 WL 3648245, at *4 (E.D.N.Y. Aug. 17, 2011) (emphasis in original) (quoting *Anderson*, 328 U.S. at 687), *aff'd*, 497 F. App'x 137 (2d Cir. 2012).

This case involves two different categories of workers.  First, two of the Plaintiffs herein, Eliezer Francis and Rene Almazo, were "front of the house" workers, who were paid differently than the kitchen employees who make up the balance of the remaining Plaintiffs.  Second, the other five Plaintiffs, Juan Gomez Rios, Gildardo Juarez, Carlos Suarez, Pedro Tlacomulco and Ramon Hernandez, were "back of the house" workers. Because each of the two categories of employees were paid differently, I will analyze them separately under the applicable legal standards.

Front of the House

As to the front of the house employees, Defendants assert that the "burden shifting analysis" set forth above is inapplicable because Defendants kept accurate records of the hours/days worked by Francis and Almazo.  The relaxed standard under *Anderson* only applies where an employer keeps inaccurate or inadequate records. *See e.g.*, *O'Brien v. Ed Donnelly Enterprises,* 575 F.3d 567, 602-03 (6th Cir. 2009). It is only where employer records are lacking that an FLSA plaintiff does not need to prove the exact amount of uncompensated work, and can then estimate his damages, shifting the burden to the employer. *Id.*

In the case at bar, Defendants could not rely on front of the house workers working a set schedule because it is impossible to predict how busy the restaurant will be

4

on a given day or night.  For example, when the restaurant is slow, they may be sent home early.  As such, it has been Defendants' practice to have these employees, such as, waiters, bussers, and bartenders punch in and out every day so the restaurant can make sure that they are paid for all hours worked.  Then their hours are tabulated at the end of the week and they are paid according to the applicable wage rates (including overtime, if they work over 40 hours).  Moreover, as opposed to back of the house workers, front of the house employees are all paid by check for all hours they work and all hours (including overtime hours) are reported on their paychecks and corresponding paystubs.

For example, in January 2009, Francis was working as a busboy and making the tip minimum wage of $4.60 per hour.  In the week ending January 25, 2009, Francis worked only Tuesday (dinner only), Wednesday (dinner only), Thursday (dinner only), Friday (dinner only), and Saturday (dinner only).  See Exhibit C, at D00814.  According to the tip log, for these six shifts, Francis made $334 in tips that week.  See Id.  Turning to his pay stub from that very same week, according to the punch in/out records, his total hours reported was 21 hours, which were paid at the tip minimum wage of $4.60.  See Exhibit S, at P000185.  Also reported on the pay stub was the identical total of tips reported on the tip log, to wit: $334.00.  See Id. Louya Corp. promoted Francis to waiter/server as of January 2011 and for the balance of his employment (through September 2014, Francis was paid at the tip credit minimum wage of $5.00 an hour for the first 40 hours of work per week and then the tip credit overtime rate of $8.625 an hour for all hours over 40 hours per week.  See e.g., Exhibit S, at P000390 (week ending 11/18/12).

Almazo was hired on or about January 7, 2013 as a food runner/busser (front of

the house) at the tip credit minimum wage rate of $5.00 an hour.  Like Francis and all front of the house employees, Almazo would punch in/out every day and was paid by check for all his wages at the applicable tip credit rates.  See e.g., Exhibit Q, at P000645.

In *Pethers v. Metro Lift Propane*, No. 09-CV-10516, 2010 WL 3023887, at *6 (E.D. Mich., July 29, 2010), the plaintiff admitted that to keep track of his time, he was required to punch a time card.  Plaintiff further admitted the amount of overtime he worked would show on his time cards. *Id.*  However, in reaching the conclusion that he was owed overtime, he simply estimated the overtime he thought he worked and calculated what he thought he should have been paid based upon that estimate.  The Court held that this was insufficient to establish a *prima facie* FLSA claim and insufficient to shift the burden to the employer to rebut Plaintiff's allegations.  The Court noted that the relaxed standard adopted by the Court in *Mt. Clemens Pottery* does not help plaintiffs show that there was a violation under the FLSA. It would only allow them to prove damages by way of estimate, if they had already established liability." *O'Brien,* 575 F.3d, at 603.

Similarly here, Francis and Almazo's wage claims fail because they cannot rely on estimates of the hours that they worked when Defendants maintain accurate records of their hours through their punch in/out system.[1]  Accordingly, Francis and Almazo's claims that they worked more hours than they were paid for must be dismissed.

---

[1] To the extent that Francis and Almazo may challenge the accuracy of the punch times on account of their failure to properly record their own time (e.g. forgetting to punch in/out on occasion), they should not be permitted to rely on their own errors in recording their own time to create the foundation for a "burden shifting" analysis.

6

Back of the House

On the other hand, Defendants concede that as to back of the house employees, they technically maintained incomplete records as compared to what is required under state and federal law.  However, Defendants indeed maintained contemporaneous records of the "back of the house" Plaintiffs' hours, days and weeks worked, pay rates and pay received.  As such, the Court cannot automatically assume that any estimates of the hours they claim they worked or pay they received are accurate.

Rather, based on the records that Defendants shall introduce at trial, the Court should find that the remaining Plaintiffs have failed to meet their burden of demonstrating that they performed work for which he was not properly compensated. *See Kuebel*, 643 F.3d at 362; *Daniels v. 1710 Realty LLC*, No. 11 Civ. 2674, 2012 WL 4354494, at *2 (2d Cir. Sept. 25, 2012) ("While [the plaintiff] is correct that a plaintiff's burden under *Anderson* is minimal, there must be at least some credible evidence that he performed overtime work.").  Indeed, Defendants' records not only show that Plaintiffs did not perform work for which they were not compensated, but rather that they were overcompensated because they were paid for hours of overtime work that they did not even perform.

As set forth in the Ouari Declaration, generally speaking, in order to make sure that Defendants did not underpay back of the house employees, Defendants utilized a formula whereby back of the house employees are paid by check for the first 40 hours of work at or above the applicable minimum wage.  Then, those first 40 hours (or less, if applicable) are reported on their paystubs.  Back of the house employees generally work a set weekly schedule that does not vary 99% of the time.  So, where a back of the house

(kitchen) employee is expected to work overtime based on the schedule, Louya Corp.'s practice has been to generally pay the employee in cash for the overtime hours. In this scenario, in order to make sure that the cash covers the employee's applicable overtime rate as well as all the overtime hours worked, Louya Corp. will generally overpay the employee based on the number of hours that are worked.

Where a back of the house employee is scheduled to work for 54 hours in a week, generally speaking, Louya Corp. will make sure that the overtime (cash) payment that the employee will receive will be at least the employee's applicable overtime rate times fourteen hours. Also, based on the number of days that an employee is set to work in the schedule, Ouari will know the numbers of hours that they will be working, so he can always make sure that all overtime hours are covered by the applicable overtime rates. Also, in the event that the schedule changes and, for example, they work an additional day, Louya Corp. will pay the employee more to compensate them for the extra overtime, where applicable.

In fact, very often, the back of the house employees actually received the equivalent of many more overtime hours pay than they actually worked, which is basically a windfall for the employees. Therefore, even in the event that the Plaintiffs challenge that they worked the exact schedule set forth in Defendants' records, Exhibits C-H, they still will be unable to prove that they worked more hours than the hours for which they were compensated.

For example, on the week ending June 5, 2011, Louya Corp. asserts that Ramon Hernandez worked 48.5 hours and received $320 in check for the first 40 hours ($8.00 an hour) plus $237 in (cash) overtime, which actually amounts to 19.75 hours of overtime

(at $12.00 an hour) even though he only worked 8.5 hours of overtime.  See Id., at D00584, 586.  Therefore, for the sake of argument only, even if Hernandez claims at trial that he worked 15 overtime hours (instead of 18.5) he was still paid for all the hours he claimed he worked because he was paid for 19.75 hours of overtime!

Similarly, on the week ending June 26, 2011, Louya Corp. asserts that Carlos Suarez worked 53 hours and received $320 in check for the first 40 hours ($8.00 an hour) plus $342 in (cash) overtime, which actually amounts to 28.5 hours of overtime (at $12.00 an hour) even though he only worked 13 hours of overtime.  See Id., at D00590, 592.  Therefore, even if Saurez claims at trial, for the sake of argument only, that he worked 25 overtime hours (instead of 13) he was still paid for all the hours he claimed he worked because he was paid for 28.5 hours of overtime!

As such, the remaining "back of the house" Plaintiffs will fail to meet their burden of demonstrating that they performed work for which he was not properly compensated.  Therefore, their claims must be dismissed.

## POINT II

### DEFENDANTS PROPERLY TOOK A "TIP CREDIT" FOR FRONT-OF-THE-HOUSE EMPLOYEES

Another theory of recovery proffered by the Plaintiffs in this case is that Defendants unlawfully deducted "earned" tips from front of the house employees, Francis and Almazo, by including management personnel in Louya Corp.'s tip pool.  In response, Defendants assert that they properly took the "tip credit" for Francis and Almazo because they regularly and customarily received substantial tips as part of their pay.  In addition, Defendants notified Francis and Almazo of the fact that the tip credit applied to their pay

and reminded them on a weekly basis whenever they received their paychecks.  Finally, Defendants assert that no bone fide management personnel were ever included in the tipped pool, therefore, the tip pool was valid and lawful and no unlawful deductions were made to Francis and Almazo's tips.

Under 29 U.S.C. Section 203(t), a "tipped employee" is defined as any employee who customarily receives more than $30 per month in tips.  Under 29 U.S.C. Section 203(m), an employer is permitted to pay tipped employees at an hourly rate less than the minimum wage by allowing as a credit the actual amount of tips received by the employee against the required hourly minimum wage.

29 C.F.R. Section 531.56(e) provides that employers are entitled to take the tip credit for duties related to the tipped occupation for time spent in duties related to the tipped occupation even though such duties are not by themselves directed towards producing tips (i.e. maintenance and preparatory or closing activities).  The regulation specifically includes cleaning, setting tables, washing dishes and similar duties.  *See Hart v. Crab Addison, Inc.*, 2014 WL 175231 (W.D.N.Y. June 24, 2014).

Similarly under New York State law, pursuant to 12 N.Y.C.R.R. Section 146-1.3, an employer may take a credit towards the basic hourly rate if a service employee or food service worker receives enough tips and if the employee has been notified of the tip credit.  Such employees are "tipped employees."

Here, Defendants do not believe that Plaintiffs dispute that they customarily and regularly received tips as part of their pay and that the amount of tips received by Francis and Almazo meet the thresholds above.  Rather, Plaintiffs main argument on this issue is whether managers unlawfully received a percentage of tips from the tip pool, which

would render Defendants' utilization of the tip credit as invalid (and result in liability against Defendants in a sum equal to the tip credit for all hours worked by Francis and Almazo).

The two leading cases in the State and Federal Courts of New York as to the rights of certain classes of employees to participate in the tip pool are *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460 (June 26, 2013) and *Winans v. Starbucks Corp.*, 698 F.3d 104 (2d Cir. 2012). Dubbed the Starbucks litigation in the wage-and-hour world, these closely watched cases stemmed from two separate litigations filed on behalf of two different groups of employees. In the *Barenboim* litigation, the baristas of Starbucks who challenged the right of shift supervisors to participate in the tip pool. The *Winans* case involved the claims of assistant store managers – salaried staff who worked side by side with the baristas serving customers but who were salaried employees with supervisory tasks – who wanted to also share in the tip pool. Starbucks policy allowed shift supervisors to share in the tip pool but prohibited assistant store managers from participating in that same pool.

The issue in both cases was how the tip jar at the cash register was to be shared. In *Barenboim*, the baristas argued assistant shift managers' participation in the tip pool was not in conformity with Labor Law § 196-d. The baristas argued the assistant shift mangers were akin to supervisors who were ineligible to participate in the tip pool as they exercised too much authority and had to be considered agents of the employer under the mandates of Labor Law 196-d. Conversely, in the *Winans* case, the assistant store managers argued they could not be excluded from the tip pool and were eligible to participate in it because of the substantial direct service they provided to customers.

11

Facing these issues, the U.S. Court of Appeals for the Second Circuit certified relevant state law issues to the New York Court of Appeals, to obtain guidance on the interpretation of Labor Law § 196-d. *See Barenboim et al. vs. Starbucks Corp. and Winans et al. vs. Starbucks Corp.*, 698 F.3d 104 (2d Cir. 2012).

In June 2013, the New York Court of Appeals allowed assistant shift supervisors to participate in the tip pool finding that "an employee whose personal service to patrons is a principal or regular part of his or her duties may participate in an employer-mandated tip allocation arrangement . . . even if that employee possesses limited supervisory responsibilities." *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 473 (June 26, 2013). The Court provided further guidance that access to a tip pool would be denied to employees with "meaningful authority" over subordinates. *Id.* Meaningful authority would include control over other employees that "might include the ability to discipline subordinates, assist in performance evaluations or participate in the process of hiring or terminating employees, as well as having input in the creation of employee work schedules, thereby directly influencing the number and timing of hours worked by staff as well as their compensation." *Id.*

By decision dated November 21, 2013, the Second Circuit applied the New York Court of Appeals guidance and upheld the District Court's earlier dismissal of the plaintiffs' claims in Barenboim. *Barenboim v. Starbucks Corp.*, No. 10–4912–cv., 2013 WL 6097, 2013 U.S. App. LEXIS 23370 (2d Cir. November 21, 2013). The Second Circuit held that assistant shift supervisors spent the majority of their time performing the same work as baristas and that their supervisory work did not rise to the level of a true supervisor, which would deny them access to customer tips under Labor Law § 196-d.

Under the Second Circuit decision, Starbucks shift supervisors could assign baristas to particular positions during their shifts, administer break periods, direct the flow of customers, provide feedback to baristas about their performance, open and close stores, change the cash register tills, and deposit money in the bank.

In the case at bar, it is expected that Plaintiffs will argue that certain maître d's at Louya Corp. were improperly included into the tip pool rendering the tip pool invalid under State and Federal laws. However, at best, the maître d's at issue's duties were akin to the shift supervisors in the Starbucks cases.

First, bone fide managers, such as Mr. Ouari and Mr. Rodriguez did not participate in the tip pool. Second, on occasion, an employee with limited managerial responsibilities (such as the aforementioned maître d') could be included in the tip pool; however, this only occurred when the employee's principal or regular duties involve substantial direct service to customers, e.g., maître d' (pours wine and seats customers). As stated above, as owner and general manager of Louya Corp., Mr. Ouari was the only person who has meaningful authority over the employees such as, the ability to discipline them, hire and fire, create the work schedule and maintain the employment records.

Under the above standard, therefore, to the extent that maître d's had "limited" supervisory functions, they could still share in tips where their principal responsibilities involved providing "personal service to patrons" (i.e. they must spend a majority of their time working to earn customer tips). *Barenboim*, 21 N.Y.3d, at 473.

Therefore, Plaintiffs' theory that Defendants maintained an unlawful tip pool must be rejected and Plaintiffs' unlawful deduction from tip claim must be dismissed.

**POINT III**

**DEFENDANTS ARE NOT RESPONSIBLE FOR ANY SPREAD OF HOURS PAY**

Plaintiffs also claim that they entitled to "spread of hours" pay where they worked a spread of over 10 hours in any single day.  At the outset, a review of the payroll records and schedules (Exhibits E-H) show that the amount of times that any Plaintiff employee worked a shift that covered over 10 hours is practically zero and, at best *de minimus*. However, even assuming *arguendo* that any employee worked a spread of hours over 10 hours on any given day, the law still does not necessarily provide them automatically with an additional hour at minimum wage.

The regulations provide that an employee is entitled to an additional hour's pay at the basic minimum hourly wage rate if the spread of hours exceeds 10 hours, or the spread of hours exceeds 10 hours and there is a split-shift (defined above). 12 N.Y.C.R.R. § 142-2.4 The regulations define the "spread of hours" as "the interval between the beginning and end of an employee's workday," including working time, meal and other breaks periods. 12 N.Y.C.R.R. § 142-2.18.

The New York Department of Labor had issued a private party opinion letter stating:

> If the weekly wages actually paid to an employee equal or exceed the total of: (i) 40 hours paid at the basic minimum wage rate; (ii) overtime paid at the particular employee's overtime rate; and (iii) one hour's basic minimum wage rate for each day the employee worked in excess of 10 hours, then no additional compensation is due.
>
> *See Yang v. ACBL Corp.*, 427 F.Supp. 2d 327, 339 (S.D.N.Y. 2005).

14

In other words, the opinion letter indicates that if an employee was paid all the amounts above, then no additional compensation is due.  Here, as set forth above, many Plaintiffs, if not all of them, were not only paid all the wages that were due to them, but also paid a premium of overtime hours for which they did not even work.  As such, under the opinion letter, Defendants should not be obligated to provide them with extra "spread of hours" pay when all the above conditions have been met (and them some).

Although the Courts have not uniformly adopted the DOL opinion letter, it should be noted that many have given deference to the Department of Labor's interpretation. *See, e.g.*, *Jenkins v. Hanac, Inc.*, 493 F. Supp. 2d 556 (E.D.N.Y. 2007) (collecting cases); *Almeida v. Aguinaga*, 500 F.Supp. 2d 366 (S.D.N.Y. 2007). In addition, the New York Appellate Division, Second Department, has given deference to the Department of Labor's interpretation, finding that it is "neither unreasonable nor irrational, nor is it in conflict with the plain meaning of the promulgated language." *Seenaraine v. Securitas Sec. Servs. USA, Inc.*, 830 N.Y.S.2d 728, 729 (2d Dep't 2007).

As such, Defendants urge this Court to adopt the same standard above and dismiss Plaintiffs' claims for spread of hours pay.

## POINT IV

## THE THREE CORPORATE DEFENDANTS ARE NOT JOINT EMPLOYERS FOR THE PURPOSES OF FEDERAL AND STATE LAWS

Plaintiffs also allege that all three corporate Defendants should be treated as a single employer under the "joint employer" theory and, therefore, any liability

determined against one employer should be imputed to all three employers.[2]  In response, Defendants assert that each corporate Defendant is a stand-alone entity that cannot be held liable (if at all) for the other two restaurants, assuming only *arguendo* that liability is established.

In *Zheng v. Liberty Apparel Co.*, 2003 WL 23028312 (2d Cir. Dec. 30, 2003), the Second Circuit Court of Appeals created a new six factor test for assessing when businesses are liable as "joint employers" for Fair Labor Standards Act ("FLSA") violations committed by their subcontractors. Prior to *Zheng*, in analyzing whether a person is an employer under the FLSA and NYLL, the Courts looked to the "economic reality" test set forth in *Herman v. RSR Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999); *Lauria v. Heffernan*, 607 F. Supp. 2d 403, 409, (E.D.N.Y. 2009). The "economic reality" test looks to whether the alleged employer: (1) "had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; (4) and maintained employment records." *Id.* (Citing *Herman*, 172 F.3d at 139).

The Second Circuit reversed the summary judgment for Liberty and remanded for consideration of a new set of factors. It held that the District Court erred in relying exclusively on the *Carter/Herman* factors in determining whether Liberty could be considered Plaintiffs' joint employer, observing that both *Carter* and *Herman* were cases where the Court did find a joint employer relationship based on the joint employer's ability to hire and fire, control work schedule, and payment. As support for this

---

[2] Defendants do not dispute that as owner of all three restaurants that Mr. Ouari is personally liable under the FLSA and NYLL to the extent that any liability is determined against any individual corporate Defendant.

proposition, the Court relied on the United States Supreme Court's decision in *Rutherford Food Corp v. McComb*, 331 U.S. 722 (1947).

In *Rutherford*, the Supreme Court held that a slaughterhouse was the joint employer of workers who de-boned meat on its premises because it had *de facto* control over their work, notwithstanding that the workers were actually hired (and fired), paid, and supervised by a "boning supervisor" with whom the slaughterhouse had subcontracted. *Rutherford* thus is a case where a business was held liable as a joint employer even though it did not hire and fire employees, set their hours, or pay them directly – which, according to the Second Circuit, necessarily precludes exclusive reliance on the *Carter/Herman* factors. This obviously begs the question of what additional factors the Court *should* consider in its analysis beyond *Carter/ Herman*.

After examining *Rutherford*, together with *Carter*, *Herman*, and other cases, the Second Circuit articulated six factors for assessing joint employer liability under the FLSA: (1) whether a putative joint employer's premises and equipment are used by plaintiffs; (2) whether the putative joint employees are part of a business organization that shifts (or could shift) as a unit from one putative joint employer to another; (3) the extent to which plaintiffs perform a "discrete line-job" that is integral to the putative joint employer's process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the putative joint employer supervises plaintiffs; (6) whether the plaintiffs work exclusively or predominantly for the putative joint employer.

In the case at bar, the only common denominator of all three corporate Defendants is the fact that Mr. Ouari owns all three restaurants. For example, each restaurant is a

separate corporate entity: Louya Corp. (Jacques Brasserie), Service Corp. (Jacques 1534) and JBB Bar and Grill Inc. (Pitch & Fork and, later, Epazote). In addition, each restaurant has its own location, equipment, and supplies. Moreover, each restaurant files its own corporate tax returns and maintains separate corporate records, including but not limited to quarterly tax filings, vendor accounts, payroll, schedules, and inventory. Clearly, because the restaurants operate in three different locations, they do not service the same clientele. A joint employer finding is less likely if the various entities legitimately work for a number of different clients simultaneously – or at least have the resources to do so.

In addition, Mr. Ouari set the restaurants up with separate management teams to oversee the day-to-day operations and supervise employees. For example, since 2009, Service Corp. has employed a series of approximately six different managers, including but not limited Ouahid (employed for one year), Houcine (employed for one year), Alain (employed for one year), Greg (employed for three or four months), Mehdi (employed for one year), Benoit (employed for the last two years). Similarly, JBB Bar and Grill, Inc. employed several managers from July 2013 to April 2015 to manage the day-to-day operations.

Although, as owner, Mr. Ouari has ultimate authority or the "last call" on all hiring, firing, schedule, and pay decisions, he allowed the individual managers of Service Corp. and/or JBB Bar and Grill, Inc. authority to make recommendations to him as they were more familiar with the day-to-day running of the individual restaurants. As for Louya Corp., Mr. Ouari has always asserted personal control of the day-to-day operations.

18

Last but not least, the seven of the nine Plaintiffs in the case worked exclusively for Louya Corp.  Indeed, only two Plaintiffs, Francis and Rios, worked at any of the other restaurants and, in both cases, the term of their respective employments was very short. Francis worked at The Pitch and Fork for only a few months at the very end of his employment after serving as a front of the house employee exclusively for Louya Corp. for almost seven years.  Rios worked almost exclusively (albeit on and off) for Louya Corp. for about six or seven years except for two or three months that he worked at the Pitch and Fork in 2014 (when he was recuperating from his hand injury) and about seven months that he worked as a Chef for Service Corp. in early 2013.

In sum, there is insufficient overlap in the three corporate Defendants to hold them jointly liable under the applicable standard.  Accordingly, in the event that any liability is established, it should only be attached to the restaurant where the respective employee worked at the tie of the purported violation (and not to all three).

### POINT V

### TO THE EXTENT THAT DEFENDANTS ARE LIABLE TO PLAINTIFFS FOR FEDERAL OR STATE WAGE VIOLATIONS, THEY DID NOT ACT WILLFULLY

Finally, the Plaintiffs in this case have asserted that various violations of state and federal law were "willful" in nature, presumably to take advantage of the fact that the law has a greater statute of limitations and provides for liquidated damages in the event that a "willful" violation is proven.  Defendants assert that they are not liable to Plaintiffs altogether for the reasons set forth above.  However, assuming *arguendo* in the event that any liability is established, this Court should limit any recovery to the Plaintiffs only to damages for violations that are not willful.

19

Statute of Limitations

The statute of limitations under the FLSA is two years, except in the case of willful violations, for which the statute of limitations is three years. 29 U.S.C. § 255(a). Willfulness in this context means "voluntary, deliberate, [or] intentional," as opposed to merely negligent. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). An employer commits a willful violation of the FLSA if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin*, 486 U.S. at 133). The burden is on the plaintiffs to show the defendants' actions were willful. *Id.* (citing *Herman v. RSR Sec. Svcs. Ltd.,* 172 F.3d 132, 141 (2d Cir. 1999)).

Defendants assert that the question of whether any actions taken herein were willful is a not a close question.  Defendants were aware of the minimum wage and overtime laws, and paid their workers in an effort to compensate them for all the hours they worked at or above the minimum wage rate and then paid the employees more when they worked over 40 hours to make sure that all overtime was covered.  In fact, in most cases, the back of the house employees were paid for much more overtime than they actually worked.   In addition, Defendants maintained time and employment records covering the period of 2009 to the present.

As such, Plaintiffs cannot meet their burden to show that Defendants' conduct rises to the level of "reckless disregard."   Thus, at worst, the statute of limitations on Plaintiffs' FLSA claims should be two years.

Liquidated Damages

Employees may be also entitled to liquidated damages under the FLSA in an amount equal to their unpaid wages, unless "the employer shows to the satisfaction of the court that [his] act or omission . . . was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C § 260; *see* 29 U.S.C § 216(b).  Defendants may only avoid liquidated damages under the FLSA if they demonstrate that they "acted in subjective good faith with objectively reasonable grounds for believing that [their] acts or omissions did not violate the FLSA." *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 150 (2d Cir. 2008); *see* 29 U.S.C. § 260. Defendants' burden in this regard is: "to establish the requisite subjective good faith, an employer must show that it took active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them." *McLean*, 2012 WL 1358739, at *5 (quoting *Barfield*, 537 F.3d at 150).

Because Defendants offer more than ample evidence of subjective good faith or objectively reasonable grounds for their actions, this Court should find Plaintiffs are not entitled to liquidated damages under the FLSA.

Employees may also recover liquidated damages under the NYLL. Prior to a November 24, 2009 amendment to the NYLL, employees could recover as liquidated damages "25% of unpaid wages if [they] could prove that employers' NYLL violations were 'willful.'" *McLean*, 2012 WL 1358739, at *8 (citing *Kuebel v. Black & Decker Inc*., 643 F.3d 352, 366 (2d Cir. 2011)). The NYLL standard for willfulness "do[es] not differ to any appreciable extent" from the standard for willfulness in FLSA cases. *Id.* at *7 (citing *Kuebel,* 643 F.3d at 366).

21

Thus, because the Court should find that Defendants' actions were not willful under the FLSA, neither are they willful for the purpose of awarding liquidated damages under the pre-amendment NYLL. Plaintiffs are not entitled to NYLL liquidated damages for the time period before November 24, 2009.

The current law, as amended in 2009, shifts the burden to the employer: employees are entitled to liquidated damages under the NYLL "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1- a). Because the Court should find Defendants proved that their actions were taken in good faith, no liquidated damages should be awarded for the time period after November 24, 2009.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court deny all of Plaintiffs' claims and dismiss the case with prejudice.

Dated: May 18, 2015
        Glen Cove, New York

THE LAW FIRM OF ADAM C. WEISS, PLLC

Adam C. Weiss
3 School Street, Suite 303
Glen Cove, New York 11542
(646) 489-0059 (tel)
(516) 759-2556 (fax)
Email: acweiss88@aol.com

*Attorneys for Defendants*